**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

TRADEINVEST ASSET MANAGEMENT COMPANY (BVI) LTD., FIRST OCEAN ENTERPRISES SA, and TECHVIEW INVESTMENTS, LTD.,

Plaintiffs,

v.

Case No. 9:22-cv-80360

WILLIAM "BEAU" WRIGLEY, JR., JAMES HOLMES, JAMES WHITCOMB, SH PARENT INC. d/b/a PARALLEL SURTERRA HOLDINGS, INC., GREEN HEALTH ENDEAVORS, LLC, PE FUND LP, and ROBERT "JAKE" BERGMANN,

Defendants.

---

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS CONCERNING "NON-RELIANCE" AND MERGER AND INTEGRATION**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. THE NON-RELIANCE CLAUSE IN SECTION 4(C) APPLIES TO THE NON-SIGNATORY SECURITIES DEFENDANTS. ........ 1

A. In Analogous Cases, Courts In This Circuit Have Extended Non-Reliance Clauses To Officers Of The Signatory. ........ 2

B. *Quail* Is Distinct From This Case. ........ 2

C. *Quail* Rests On Precedent That Establishes That The Non-Signatory Securities Defendants Are Entitled To Invoke The Non-Reliance Clause. ........ 4

II. THE NON-RELIANCE CLAUSE IS FULLY ENFORCEABLE EVEN IN THE ABSENCE OF AN INTEGRATION OR MERGER CLAUSE. ........ 7

CONCLUSION ........ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)....8

*Alltrista Plastics, LLC v. Rockline Indus., Inc.*,
2013 WL 5210255 (Del. Sup. Ct. Sept. 4, 2013)....8

*Sea Bowld Marine Grp., LDC v. Oceanfast Pty, Ltd.*,
432 F. Supp. 2d 1305 (S.D. Fla. 2006)....6

*Brown v. Earthboard Sports USA, Inc.*,
481 F.3d 901 (6th Cir. 2007)....4

*Central Florida Sterilization, LLC v. Synergy Health AST, LLC*,
2016 WL 11457771 (M.D. Fla. April 19, 2016)....8

*Galstaldi v. Sunvest Communities USA, LLC*,
637 F.Supp.2d 1045 (S.D.Fla.2009)....4, 5

*Garcia v. Santa Maria Resort, Inc.*,
528 F. Supp. 2d 1283 (S.D. Fla. 2007)....2, 5

*Hamilton v. Sheridan Healthcorp, Inc.*,
2014 WL 537343 (S.D. Fla. Feb. 11, 2014)....5

*Jackson Inv. Grp., LLC v. Thomas*,
325 F. Supp. 3d 1334 (N.D. Ga. 2017)....2

*Kronenberg v. Katz*,
872 A.2d 568 (Del. Ch. 2004)....7

*Metro Storage Int'l LLC v. Harron*,
275 A.3d 810 (Del. Ch. 2022)....6

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008)....6

*MS Dealer Serv. Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999)....5, 6

*Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*,
918 F. Supp. 2d 532 (W.D. Va. 2013)....7

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*,
847 F. Supp. 2d 1333 (S.D. Fla. 2012) ........................................................................ *passim*

*RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*,
45 A.3d 107 (Del. 2012) ..................................................................................................8

*Tracinda Corp. v. DaimlerChrysler AG*,
502 F.3d 212 (3d Cir. 2007)..............................................................................................5

## INTRODUCTION[1]

Plaintiffs' new effort to overcome the SAFE's[2] express non-reliance provision finds no support and should be rejected. In that agreement, Plaintiffs explicitly represented that they were not making their investment in reliance on *any* statements other than certain express representations and warranties within the four corners of the SAFE. However, at the December 6, 2022 hearing, Plaintiffs argued for the first time that Section 4(c) only extends to SH Parent and not to Surterra, Wrigley, Whitcomb, or Holmes (the "Non-Signatory Securities Defendants"). Plaintiffs also contended that the absence of "standard" merger or integration clauses in the SAFE renders Section 4(c) toothless. Both arguments are meritless.

## ARGUMENT

### I. THE NON-RELIANCE CLAUSE IN SECTION 4(C) APPLIES TO THE NON-SIGNATORY SECURITIES DEFENDANTS.

Section 4(c) of the SAFE contains a non-reliance clause, which provides in material part:

> The Investor confirms that no representations or warranties have been made to the Investor other than pursuant to Section 3 hereof and that the Investor has not relied upon any representation or warranty in making or confirming the Investor's investment other than pursuant to Section 3 hereof.

At argument, Plaintiffs seized on a single line from a single case, *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 847 F. Supp. 2d 1333 (S.D. Fla. 2012), to belatedly argue that even if this clause insulates the Company from liability for alleged misrepresentations made in connection with soliciting the SAFE, such protection does not extend to the Non-Signatory Securities Defendants because they did not sign the SAFE. Plaintiffs are wrong.

---

[1] Defendants SH Parent, Surterra, Wrigley, Whitcomb, and Holmes submit this Supplemental Brief pursuant to this Court's December 6, 2022 Order. (D.E. 105.)

[2] All capitalized terms not defined herein shall have the meaning ascribed in the Complaint.

**A. In Analogous Cases, Courts In This Circuit Have Extended Non-Reliance Clauses To Officers Of The Signatory.**

The Non-Signatory Securities Defendants' status as SH Parent's subsidiary and officers does not remove them from the protection of the non-reliance clause. Indeed, courts in this Circuit have extended non-reliance clauses to officers at the motion to dismiss stage even where they were not signatories to the instrument at issue. For example, in *Jackson Inv. Grp., LLC v. Thomas*, the plaintiff had executed two notes with a corporation, Blue Earth, allegedly in reliance on oral representations from Blue Earth's CEO and one of its executive vice-presidents claiming that Blue Earth had take-out financing "lined up." 325 F. Supp. 3d 1334, 1353 (N.D. Ga. 2017). In each of the notes—which were executed only by the plaintiff and Blue Earth—the plaintiff represented "that it was not relying on any oral or written statements outside of the representations in the agreement." *Id.* Even though the officers of Blue Earth were not parties to the notes, the court found that the non-reliance clauses "preclude[d] the plaintiff from establishing reasonable reliance on alleged oral statements regarding take-out financings." *Id.* The allegations here are consistent with the facts in *Jackson* and compel the same result. *See also Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007) (dismissing fraud claims against non-signatory sales representatives where the plaintiffs represented that they had "not relied upon any prior agreements or representations made by anyone other than Developer . . . except as specifically stated in this Contract").

**B. *Quail* Is Distinct From This Case.**

Plaintiffs' reliance on *Quail* is misplaced. *Quail* concerned the sale of a passenger ship, the *Pacific*, through the plaintiff Quail's purchase of stock in Templeton, a corporation whose principal asset was the *Pacific*. Quail purchased the stock from Flameck, another corporation that was not a party to the litigation. Quail alleged that the defendants induced it to purchase the stock

by misrepresenting the *Pacific*'s condition. Notably, Quail alleged that CVC, the prior owner of the *Pacific*, and its president, Patriani, directed SeaHawk, the company that operated the *Pacific*, to conceal the ship's condition. *Quail*, 847 F. Supp. 2d at 1336.

The agreement between Quail and Flameck included three relevant clauses. The first stated that "the Seller [Flameck] makes no warranties or representations as to the condition of the Vessel, which is being transferred . . . on an 'AS IS WHERE IS' basis." *Id.* at 1346. The second stated that "the Seller [Flameck] makes no representation or warranty, express or implied, in respect of the Shares or the Company or any of its assets, liabilities or operations, and any such other representations or warranties are hereby expressly disclaimed." *Id.* And the third provided "This Agreement . . . constitutes the entire agreement *between the parties* pertaining to the subject matter hereof and supersedes all prior agreements, understanding, negotiations and discussions, whether oral or written, *of the parties*." *Id.* (emphases added). CVC, SeaHawk, and their respective presidents sought to invoke these clauses to dismiss a securities fraud claim. The court refused, citing the fact that none of the defendants were parties to the agreement. *Id.*

The facts here are distinct. *First*, the SAFE contains an express non-reliance clause, in which Plaintiffs explicitly disclaimed reliance on any representations or warranties outside the four corners of the agreement, as opposed to *Quail*'s "no other representations" clauses, which concerned only the seller's representations. The provisions in *Quail* said nothing about the *buyer's* reliance or the *buyer's* disclaimer of reliance. The distinction is key because the nonsignatory defendants in *Quail* sought to invoke the contractual representation of the seller, while the Non-Signatory Securities Defendants here invoke the promises of the Plaintiffs themselves. Furthermore, the *Quail* defendants argued that it was unreasonable to rely on alleged oral misrepresentations because the seller represented in the contract that none were made. By contrast,

the Non-Signatory Securities Defendants argue that Plaintiffs explicitly disclaimed *reliance* on any oral representations, regardless of whether and by whom they were made. There is a material difference between a seller of securities representing that it has made no additional representations, and a purchaser of securities unequivocally representing that it did not rely on any statements except those in the agreement itself.

*Second*, the defendants seeking to invoke the contract in *Quail* were third parties with attenuated relationships with the seller. They were not the seller's affiliates, officers, or directors: CVC was the vessel's prior owner; Patriani was CVC's president; SeaHawk was an independent contractor hired by CVC to manage the vessel; and Spinelli was SeaHawk's president. By contrast, the Non-Signatory Securities Defendants were all either executives or a wholly owned subsidiary of SH Parent at the time that it executed the SAFE. Plaintiffs treat SH Parent and Surterra as effectively the same entity, defining them collectively as the "Company" and referring to them as a single unit throughout the Complaint. And Plaintiffs insist that Wrigley, Whitcomb, and Holmes controlled the Company during the relevant period of time. Plaintiffs thus cannot dispute that they have alleged an intimate and unbroken connection between the Non-Signatory Securities Defendants and the corporate signatory of the SAFE. Consistent with Plaintiffs' allegations, the Non-Signatory Securities Defendants are entitled to invoke the SAFE's non-reliance clause.

### C. *Quail* Rests On Precedent That Establishes That The Non-Signatory Securities Defendants Are Entitled To Invoke The Non-Reliance Clause.

Plaintiffs rely on *Quail* for its recitation that "as a general rule, a non-party to a contract may not invoke that contract for his benefit." *Id.* In turn, *Quail* supported this proposition with two references, one to a Sixth Circuit opinion[3] and one to a case out of this District, *Galstaldi v.*

[3] That case, *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 905 (6th Cir. 2007), is equally distinct from the facts of this case. There, the nonparty defendant who sought to invoke an issuing

*Sunvest Communities USA, LLC*, 637 F.Supp.2d 1045, 1055 (S.D. Fla. 2009). This "general rule," however, is subject to three exceptions which were not addressed in *Quail* nor by Plaintiffs here: (1) equitable estoppel; (2) agency or related principles; and (3) "when the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party." *MS Dealer Services Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). Each of these exceptions applies here.

*First*, a nonsignatory can invoke an arbitration clause[4] under an equitable estoppel theory "[w]hen each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement," or "when the signatory [to the contract containing the clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* at 947. Both justifications exist here. It is indisputable that Plaintiffs' claims against the Non-Signatory Securities Defendants "make[] reference to" and "presume the existence of" the SAFE. Indeed, the existence of an underlying investment contract is a required element of a 10b-5 claim. *Garcia*, 528 F. Supp. 2d at 1292. Likewise, Plaintiffs have raised allegations of "interdependent and concerted misconduct by both the nonsignator[ies]" and one or more of the signatories to the contract. Plaintiffs have conceded that *no* claim could lie against the Company absent misconduct on the part of its management. (Opp. at 36 n.17.) And *every* allegation against SH Parent is simultaneously asserted

company's non-reliance clause was a financial advisor who passed on a tip about the company that turned out to be a fabrication. The *Brown* defendant had no connection to the issuing company.

[4] While the exceptions from *MS Dealer* are framed as exceptions for invoking an arbitration clause, there is no principled reason to suggest that the *Quail* decision would extend the general rule from *MS Dealer* to non-reliance clauses without also adopting the exceptions to that rule. Other courts have expressly rejected such an argument. *See, e.g.*, *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 223 (3d Cir. 2007); *Hamilton v. Sheridan Healthcorp, Inc.*, 2014 WL 537343, at *3 (S.D. Fla. Feb. 11, 2014) (citing *Tracinda*).

against Surterra through the collective term "the "Company."

*Second*, as Plaintiffs' entire argument in this respect makes clear, the agency exception also applies because "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke [the non-reliance clause] may evisceration of the underlying [clause] between the signatories be avoided." *MS Dealer*, 177 F.3d at 947. As for Surterra, there is no question that a wholly owned subsidiary constitutes a "close relationship" permitting Surterra to enforce the non-reliance clause. *See Sea Bowld Marine Grp., LDC v. Oceanfast Pty, Ltd.*, 432 F. Supp. 2d 1305, 1315 n.7 (S.D. Fla. 2006) (allowing Oceanfast USA, a subsidiary of Oceanfast, to enforce Oceanfasts' agreement as "an agent of a signatory"). As for Wrigley, Whitcomb, and Holmes, "officers [of Delaware corporations] act as agents for the entity." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 843 (Del. Ch. 2022). Similarly, Plaintiffs concede that its claims against SH Parent require the Court to "look to the state of mind of the *individual corporate official or officials*." (Mot. at 38 (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008))). And notably, Plaintiffs insist that Wrigley, Whitcomb, and Holmes exerted such control over the Company as its officers that they are vicariously liable for any statement attributable to it. But if Plaintiffs are correct that a corporation, but none of its officers or alleged controllers, can invoke a non-reliance clause, then the non-reliance clause is eviscerated. In that case, a plaintiff could always end-run a non-reliance clause by suing the human agents who made the statements rather than the corporation. The agency exception specifically seeks to avoid that result.

*Third*, nonsignatories may invoke contractual protections where they are intended beneficiaries of those protections. Crucial to this exception is another representation Plaintiffs made in Section 4(d), where they "acknowledge[d] that the Company, *its management* and others

*will rely upon the Investor's* confirmation, *representations*, warranties, acknowledgments and agreements set forth in this Safe." (SAFE at 4(d) (emphases added)). Not only did Plaintiffs represent to SH Parent that they were not relying on any extra-contractual representations, but they also acknowledged that others, expressly including the Company's management, would rely on that representation. Plaintiffs cannot acknowledge that the Non-Signatory Securities Defendants would rely on a representation while simultaneously barring them from invoking it. Indeed, if "the Company, its management and others" cannot invoke these representations, then a clause affirming their reliance on them becomes meaningless. *See Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 549 n.17 (W.D. Va. 2013) (non-signatory officers were "third party beneficiaries of the terms of" the non-reliance clause).

## II. THE NON-RELIANCE CLAUSE IS FULLY ENFORCEABLE EVEN IN THE ABSENCE OF AN INTEGRATION OR MERGER CLAUSE.

During oral argument, Plaintiffs emphasized the absence of a merger or integration clause from the SAFE, contending that this absence nullifies the non-reliance provision in Section 4(c) and, thus, permitted Plaintiffs to reasonably rely on representations and warranties allegedly made *outside* of the four corners of the SAFE. (*See also* Opp. at 28.) That argument fails.

As explained in the Reply, a merger or integration clause merely "serves to 'limit the scope of the parties' contractual obligations to those set forth in the written agreement."' (D.E. 100, at 13, n.7, quoting *Kronenberg v. Katz*, 872 A.2d 568, 591-92 (Del. Ch. 2004).)[5] Delaware courts have thus made it clear that merger or integration clauses are distinct from non-reliance clauses. The weight of Delaware authority explains that non-reliance clauses bar fraud claims premised on extra-contractual representations, but merger or integration clauses alone do not. *See Abry*

[5] Plaintiffs concede that Delaware law controls the interpretation of the SAFE. (Opp. at 33.)

*Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1058 (Del. Ch. 2006); *RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 118-19 (Del. 2012); *Alltrista Plastics, LLC v. Rockline Indus., Inc.*, 2013 WL 5210255, at *6 (Del. Sup. Ct. Sept. 4, 2013). At least one court in the Eleventh Circuit has recognized this line of precedent. The non-reliance clause in *Central Florida Sterilization, LLC v. Synergy Health AST, LLC* was similar to Section 4(c) of the SAFE, stating: "Each party to this Agreement acknowledges that no representations, warranties, inducements, promises, or agreements, oral or otherwise, have been made by any Party, or anyone acting on behalf of any Party, which are not embodied herein." The court cited to both *Abry* and *RAA* in concluding that such non-reliance language precluded plaintiff's fraud claim. 2016 WL 11457771, at *1, 5–6 (M.D. Fla. April 19, 2016).

While a non-reliance clause standing alone is sufficient to bar misrepresentation claims, a merger or integration clause may also be *sufficient*, but is not *necessary*, to bar such claims. Plaintiffs advocate a departure from this standard, arguing that, for a non-reliance clause to have any effect, it must be accompanied by a merger or integration clause. Not so. And Plaintiffs tacitly concede that Delaware authority contemplates "unambiguous 'non-reliance' language ***and/or*** express integration clauses." (Opp. at 33 (emphasis added).) Indeed, Plaintiffs cite no cases, and Defendants have located none, that require that a so-called "standard" merger or integration clause accompany a non-reliance clause. Surely parties as sophisticated as Plaintiffs, who bargained for the non-reliance clause at issue, cannot now escape its consequences by complaining that the SAFE lacked an entirely different provision.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court apply the non-reliance clause to the Non-Signatory Securities Defendants.

Date: December 9, 2022

**SAUL EWING ARNSTEIN & LEHR LLP**

By: /s/ *Jeffrey Gilbert*

Jeffrey Gilbert
Florida Bar No. 375411
Steven M. Dickstein
Florida Bar No. 1010439
Jeffrey.Gilbert@saul.com
Steven.Dickstein@saul.com
701 Brickell Avenue, 17th Floor
Miami, Florida 33131
305-428-4552

**AKIN GUMP STRAUSS HAUER & FLED LLP**

By: */s/ Neal R. Marder*

Neal Ross Marder (*pro hac vice*)
nmarder@akingump.com
Joshua A. Rubin (*pro hac vice*)
rubinj@akingump.com
Sina S. Safvati (*pro hac vice*)
ssafvati@akingump.com
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
310-229-1000

Stephanie Lindemuth (*pro hac vice*)
slindemuth@akingump.com
One Bryant Park
Bank of America Tower
New York, NY 10036
212-872-7491

***Attorneys for Defendants SH Parent Inc. d/b/a Parallel, Surterra Holdings Inc., and James Whitcomb***

**MARCUS NEIMAN**
**RASHBAUM & PINEIRO LLP**

By: */s/ Jeffrey E. Marcus*
Jeffrey E. Marcus, Esq.
Florida Bar No. 310890
jmarcus@mnrlawfirm.com
Jason L. Mays, Esq.
Florida Bar No. 106495
jmays@mnrlawfirm.com
2 S. Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel: (305) 400-4262
Fax: (954) 688-2492

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Sameer Nitanand Advani*
Sameer Nitanand Advani (*pro hac vice*)
sadvani@willkie.com
Brittany M. Wagonheim (*pro hac vice*)
bwagonheim@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
212-728-8587

Craig C. Martin (*pro hac vice*)
cmartin@willkie.com
Aaron J. Hersh (*pro hac vice*)
ahersh@willkie.com

300 North LaSalle Drive
Chicago, IL 60654
312-728-9000

***Attorneys for Defendants William Wrigley Jr., Green Health Endeavors, LLC and PE Fund LP***

**ZEBERSKY PAYNE SHAW LEWENZ LLP**

By: */s/ Zachary D. Ludens*
Jordan Alexander Shaw (FBN 111771)
jshaw@zpllp.com
Zachary Dean Ludens (FBN 111620)
zludens@zpllp.com
110 Southeast 6th Street
Suite 2900
Fort Lauderdale, FL 33301
954-595-6075

***Attorneys for Defendant James Holmes***