**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

TRADEINVEST ASSET MANAGEMENT
COMPANY (BVI) LTD., FIRST OCEAN
ENTERPRISES SA, and TECHVIEW
INVESTMENTS, LTD.,

      Plaintiffs,

v.                                                                               Case No.  9:22-cv-80360

WILLIAM "BEAU" WRIGLEY, JR.,
JAMES HOLMES, JAMES WHITCOMB,
SH PARENT INC.  d/b/a PARALLEL,
SURTERRA HOLDINGS, INC., GREEN
HEALTH ENDEAVORS, LLC, PE FUND
LP, and ROBERT "JAKE" BERGMANN,

      Defendants.

_____

**ANSWER TO COMPLAINT**

**JURY TRIAL DEMANDED**

## ANSWER TO COMPLAINT

Defendants SH Parent Inc. d/b/a Parallel, Surterra Holdings Inc., and James Whitcomb ("Defendants") hereby answer the numbered paragraphs of the Complaint ("Complaint") (Dkt. No. 59) filed by Plaintiffs ("Plaintiffs") as set forth below.

## INTRODUCTORY STATEMENT

The Complaint contravenes the Federal Rules of Civil Procedure by improperly combining factual allegations with legal conclusions and argument. Many of the Complaint's allegations are overly broad, vague, conclusory, and/or contain terms that are undefined and susceptible to different meanings. Accordingly, by way of general response, all allegations in the Complaint are denied unless expressly and specifically admitted. Any factual allegation admitted below is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, or speculation contained in the allegation or the Complaint as a whole.

Unless otherwise noted, Defendants deny knowledge or information sufficient to form a belief as to the truth of any allegation relating to any other entity, any other defendants, or any other person. Defendants further respectfully submit that the Complaint contains numerous purported allegations that constitute legal conclusions. Defendants are not required to respond to legal conclusions in their Answer, but to the extent a response is required, Defendants deny such allegations, unless otherwise stated.

The comments and objections in this Introductory Statement are incorporated into each numbered paragraph of this Answer.

## SPECIFIC RESPONSES

1.    Defendants admit that Beau Wrigley, Jr. is a defendant in this action and that the Complaint alleges claims under Section 10(b) of the 1934 Securities Exchange Act and SEC Rule 10b-5, among other claims. Defendants deny the remaining allegations in Paragraph 1.

2.    Defendants admit that the SAFE Plaintiffs invested $25 million through a Simple Agreement for Future Equity. Defendants admit that the Company previously announced that it

planned to go public by merging with a SPAC and that the planned merger was ultimately not consummated.  The remaining allegations in Paragraph 2 contain conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 2.

3.      Defendants admit that the SAFE Plaintiffs funded their $25 million investment on September 27, 2021.  The remaining allegations in Paragraph 3 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 3.

4.      Paragraph 4 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 4.

a.      Defendants admit that the Company incurred approximately $145 million of junior debt, $165 million of senior debt, and $13.5 million in debt to PE Fund. Paragraph 4, subsection (a) contains allegations relating to defaults of debt under certain loan agreements. Defendants therefore respectfully refer the Court to the relevant loan agreements for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in Paragraph 4, subsection (a) contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 4, subsection (a).

b.      Defendants admit that the Company incurred approximately $44 million in debt to Green Health.  Paragraph 4, subsection (b) contains allegations relating to defaults of debt under the Green Health Notes.  Defendants therefore respectfully refer the Court to the Green Health Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in Paragraph 4, subsection (b)

contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 4, subsection (b).

  c.  Defendants admit that the SAFE Plaintiffs funded their investment on September 27, 2021.  Defendants deny the remaining allegations in Paragraph 4, subsection (c).

  d.  Defendants admit that the Company entered into the PE Fund Note on June 30, 2021.  Paragraph 4, subsection (d) contains allegations relating to the terms of certain loan agreements, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the relevant loan agreements, including the PE Fund Note, for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in Paragraph 4, subsection (d) contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 4, subsection (d).

  e.  Defendants deny the allegations in Paragraph 4, subsection (e).

  f.  Defendants deny the allegations in Paragraph 4, subsection (f).

  5.  Paragraph 5 contains allegations regarding Wrigley's "intent" to which Defendants lack sufficient knowledge to admit or deny such allegations.  Defendants admit that Wrigley had committed to invest funds in the SAFE, and that Wrigley invested $10.6 million in the SAFE. Defendants further admit that the Company made a $3 million payment on the principal of the PE Fund Note.  Defendants otherwise deny the allegations in Paragraph 5.

  6.  Defendants admit that the Company had incurred more than $350 million in debt by the end of June 2021 and that there was an industry-wide decline in the cannabis industry. Paragraph 6 contains allegations relating to defaults of debt under certain loan agreements. Defendants therefore respectfully refer the Court to the relevant loan agreements for their full

context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in Paragraph 6 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 6.

7.      Paragraph 7 contains allegations relating to certain financial projections. Defendants therefore respectfully refer the Court to the relevant financial projections for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 7.

8.      Defendants admit that the Company reduced its revenue projections and EBITDA projections for 2022 between August 2021 and January 2022.  Paragraph 8 contains allegations relating to certain financial projections.  Defendants therefore respectfully refer the Court to the relevant financial projections for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 8.

9.      Defendants admit that the Company was negotiating a potential SPAC transaction with Ceres, which transaction was never consummated.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 9 regarding Wrigley's subjective understanding and motives and, on that basis, deny those allegations.  Defendants otherwise deny the allegations in Paragraph 9.

10.     Defendants admit the Company was negotiating a potential SPAC transaction, which transaction was never consummated, and that the Company then shifted to seeking a private acquisition.  Defendants deny the remaining allegations in Paragraph 10.

11.     Defendants lack sufficient information to admit or deny whether the SAFE Plaintiffs acted prudently, and thus deny the allegation that Plaintiffs "prudently" inquired about the amount of capital the Company would need to operate until the end of the second quarter of 2022 on that basis.  Defendants deny the remaining allegations in Paragraph 11.

12.     Defendants admit that Plaintiffs invested $25 million through the SAFE on September 27, 2021, but otherwise deny the allegations in Paragraph 12.

13.     Paragraph 13 contains allegations relating to defaults of debt under certain loan agreements.  Defendants therefore respectfully refer the Court to the relevant loan agreements for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in Paragraph 13 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 13.

14.     Defendants admit that PE Fund sent a default notice to the Company in November 2021 and that the junior creditors sent their default notice thereafter.  Defendants respectfully refer the Court to the relevant notices for their full context and meaning and deny the allegations in Paragraph 14 to the extent they conflict with these documents.  Defendants admit that Wrigley resigned as CEO in November 2021.  Defendants deny the remaining allegations in Paragraph 14.

15.     Paragraph 15 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 15.

16.     To the extent Paragraph 16 relates to Techview's claim under the Georgia Uniform Voidable Transactions Act, no response is required because that claim has been dismissed.  Paragraph 16 additionally contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 16.

17.     Defendants admit that TradeInvest invested $20 million in the SAFE.  Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 17 and, on that basis, deny them.

18.     Defendants admit that First Ocean invested $5 million in the SAFE.  Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 18 and, on that basis, deny them.

19.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 19 and, on that basis, denies them.

20.     To the extent Paragraph 20 relates to Techview's claim under the Georgia Uniform Voidable Transactions Act, no response is required because that claim has been dismissed.  To the extent a response is required, Defendants admit that Techview holds $10 million of the Company's Senior Notes and approximately $10 million of the Company's Series D Preferred Stock. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 20 and, on that basis, deny them.

21.     Defendants deny that Parallel's principal place of business is in Georgia. Defendants admit the remaining allegations in Paragraph 21.

22.     Defendants deny that Surterra Holdings Inc.'s principal place of business is in Georgia.  Defendants admit the remaining allegations in Paragraph 21.

23.     No response is required to Paragraph 23 because PE Fund has been terminated from this action.  To the extent a response is required, Defendants admit that PE Fund is a Delaware limited partnership and a holder of the Company's Senior Notes.  Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 23 and, on that basis, deny them.

24.     No response is required to Paragraph 24 because Green Health has been terminated from this action.  To the extent a response is required, Defendants admit that Green Health is a Delaware limited partnership and a holder of convertible secured notes issued by the Company. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 24 and, on that basis, deny them.

25.     Defendants admit that Wrigley initially invested in the Company in 2017, that Wrigley became Chairman and CEO of the Company in 2019, and that Wrigley resigned as CEO of the Company on November 19, 2021.  Defendants lack sufficient information to admit or deny the allegation that Wrigley controlled Green Health and PE Fund and, on that basis, deny them.

26.     Defendants admit that Holmes was a director at Parallel from September 2017 through November 2021, as well as its Chief Strategy Officer from January 2019 through December 2021.  Defendants lack sufficient information to admit or deny the allegation in Paragraph 26 relating to Holmes's residence and, on that basis, deny it.

27.     Defendants admit that Whitcomb was the Company's Chief Development Officer until November 19, 2021 when he replaced Wrigley as CEO.  Defendants deny that Whitcomb is currently CEO.  Defendants deny that Whitcomb resides in Florida.

28.     No response is required to Paragraph 28 because Robert Bergmann has been terminated from this action.  To the extent a response is required, Defendants admit that Robert Bergmann was a founder of Parallel and its first CEO.  Defendants lack sufficient information to admit or deny the allegation relating to Bergmann's residence and, on that basis, denies it.

29.     Paragraph 29 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 29.

30.     Paragraph 30 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 30.

31.     Paragraph 31 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 31.

32.     Defendants admit that Wrigley became Chairman and CEO of the Company in the second half of 2018 and that the Company incurred debt in 2018. Defendants deny the remaining allegations in Paragraph 32.

33.     Defendants admit that the Company issued Senior Notes with a face amount of $165.5 million in or around October 2018, with a maturity date of October 16, 2028.  Defendants deny the remaining allegations in Paragraph 33.

34.     Defendants admit the allegations in Paragraph 34, and respectfully refer the Court to the Note Purchase Agreement for a complete and accurate description of the terms governing the Senior Notes.

35.     Paragraph 35 contains allegations about the specific terms of the Note Purchase Agreement and the Guarantee and Collateral Agreement, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Note Purchase Agreement and the Guarantee and Collateral Agreement for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.

36.     Defendants admit that PE Fund is a holder of the Senior Notes in the amount of $91.2 million.  Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 36 and, on that basis, deny them.

37.     Defendants admit that Techview holds $10 million of the Company's Senior Notes and approximately $10 million of the Company's Series D Preferred Stock.

38.     Paragraph 38 contains allegations about the Junior and Senior Notes, the PE Fund Note, and the Bergmann Settlement.  Defendants therefore respectfully refer the Court to the relevant documents for their full meaning and context and deny the allegations to the extent the allegations conflict with the contents and meaning.  Plaintiffs' allegations relating to the default of the Junior and Senior Notes and the breach of "various financial test[s] and additional covenants" are conclusions of law to which no response is required.  To the extent a response is required, Defendants deny these allegations.

39.     Paragraph 39 contains legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that the Company did not state to the SAFE Plaintiffs that the Company was in default, but otherwise deny the allegations in Paragraph 39.

40.     Defendants admit that the Company issued a Junior Note with a face amount of approximately $145 million on May 7, 2021 and that the holder of the Junior Note, SAF Group, is based in Canada.  Defendants respectfully refer the Court to the Junior Note for its full context and meaning and deny the allegations in Paragraph 40 to the extent they conflict with the Junior Note's contents and meaning.

41.     Defendants admit that the Company used the Junior Note funds to acquire NETA in 2019.  Paragraph 41 additionally contains allegations about the specific terms of the Junior Note, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Junior Note for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.

42.     Defendants admit that the Company issued a series of notes to Green Health. Paragraph 42 contains allegations about the specific terms of the Green Health Notes, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court

to the Green Health Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.

43.     Defendants admit that Wrigley was Chairman and CEO of the Company when the Green Health Notes were negotiated.  Defendants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 43 and, on that basis, deny them.

44.     Paragraph 44 contains allegations about the specific terms of the Green Health Notes, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Green Health Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants lack sufficient knowledge to admit or deny the allegation relating to Wrigley's motive and/or intent and, on that basis, deny the allegation.  Defendants deny the remaining allegations in Paragraph 44.

45.     Defendants admit that Holmes was involved in negotiating these terms on behalf of Green Health Endeavors, and that Holmes served as an officer and director of the Company during this time, but denies the characterization of these facts. The Company lacks sufficient knowledge to admit or deny whether Holmes reported directly to Wrigley while negotiating on behalf of Green Health Endeavors and, on that basis, denies the allegation. Defendants deny the remaining allegations in Paragraph 45.

46.     Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 46 relating to Plaintiffs' knowledge and, on that basis, deny them.  Defendants admit that the Company issued a series of notes to Green Health.  Paragraph 46 contains allegations about the specific terms of the Green Health Notes, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Green Health Notes for their full

context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in Paragraph 46 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 46.

47.     Defendants admit that the Company issued a $6 million note to Green Health in January 2021 and that the Company made a $6 million payment to Bergmann in January 2021. Paragraph 47 contains allegations about the specific terms of the Green Health Notes, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Green Health Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants otherwise deny the allegations in Paragraph 47.

48.     Paragraph 48 contains allegations about the specific terms of the Third and Fourth Amended Green Health Notes, the text of which provides the best evidence of those terms. Defendants therefore respectfully refer the Court to the Third and Fourth Amended Green Health Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants lack sufficient knowledge to admit or deny the allegation relating to Wrigley's motive and/or intent and, on that basis, deny the allegations. Defendants deny the remaining allegations in Paragraph 48.

49.     Defendants admit that the Company entered into a forbearance agreement with Green Health on May 7, 2021.  Paragraph 49 contains allegations relating to the Third and Fourth Amended Green Health Notes and the forbearance agreement.  Defendants therefore respectfully refer the Court to the Third and Fourth Amended Green Health Notes and the forbearance agreement for their full context and meaning and deny the allegations to the extent the allegations

conflict with the contents and meaning.  Defendants admit that no information about potential claims against Green Health were disclosed to Plaintiffs but deny that such disclosure was or is required.  Defendants deny the remaining allegations in Paragraph 49.

50.     Defendants admit that the Company entered into the Fourth and Fifth Restated Green Health Notes on May 7, 2021.  Paragraph 50 contains allegations about the specific terms of the Fourth and Fifth Restated Green Health Notes, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Fourth and Fifth Restated Green Health Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 50.

51.     Paragraph 51 contains allegations relating to the Green Health Notes.  Defendants therefore respectfully refer the Court to the Green Health Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 51, including the allegations relating to Wrigley's "expectation" and intent and, on that basis, deny them.

52.     Paragraph 52 contains allegations relating to the Green Health Notes.  Defendants therefore respectfully refer the Court to the Green Health Notes, as well as the Fourth and Fifth Restated Green Health Notes, for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Plaintiffs' allegation relating to the "justification" for a conversion contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations relating to whether there was a "justification" for specific terms.  Defendants lack sufficient knowledge to admit or deny the

remaining allegations in Paragraph 52, including whether the conversion figure was devised by, and for the benefit of, Wrigley and, on that basis, deny the remaining allegations.

53.     Paragraph 53 contains allegations relating to Robert Bergmann, who has been dismissed from this action, to which no response is required.  To the extent a response is required, Defendants admit the allegations in Paragraph 53.

54.     Paragraph 54 contains allegations relating to Robert Bergmann, who has been dismissed from this action, to which no response is required.  To the extent a response is required, Defendants admit that Bergmann filed a petition for appraisal of his Company common stock in the Delaware Court of Chancery and that the Company entered into the Bergmann Settlement in or around January 2021, but otherwise deny the remaining allegations in Paragraph 54. Defendants respectfully refer the Court to the Bergmann Settlement for its full context and meaning and denies the allegations to the extent the allegations conflict with the contents and meaning.

55.     Paragraph 55 contains allegations relating to Robert Bergmann, who has been dismissed from this action, to which no response is required.  To the extent a response is required, Defendants note that Paragraph 55 contains allegations about the specific terms of the Bergmann Settlement, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Bergmann Settlement for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants admit that on or about January 8, 2021, the Company made an initial $6 million payment to Bergmann.  Defendants otherwise deny the remaining allegations in Paragraph 55.

56.     Paragraph 56 contains allegations relating to Robert Bergmann, who has been dismissed from this action, to which no response is required.  To the extent a response is required,

Defendants note that Paragraph 56, subsections (a) and (b) contain allegations about the specific terms of the Bergmann Settlement and the Bergmann Note, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Bergmann Settlement and the Bergmann Note for a complete and accurate description of the terms and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 56.

57.     Defendants admit that the Company did not state to Plaintiffs that the Company was unable to satisfy its obligations under the Bergmann Debts before Plaintiffs made their $25 million investment, but deny that any such inability existed or that Defendants had any such disclosure obligations. Defendants deny the remaining allegations in Paragraph 57.

58.     Defendants admit that, as of June 30, 2021, the Company did not have sufficient funds to make the $13.5 million second payment under the Bergmann Settlement absent additional efforts to raise funds.  Defendants deny the remaining allegations in Paragraph 58.

59.     Defendants admit that the Company issued the PE Fund Note to PE Fund and that the Company subsequently made the second payment under the Bergmann Settlement.  Paragraph 59 contains allegations about the specific terms of the PE Fund Note, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the PE Fund Note for a complete and accurate description of the terms and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants lack sufficient knowledge to admit or deny the remaining allegations in Paragraph 59 and, on that basis, deny them.

60.     Paragraph 60 contains allegations relating to the PE Fund Note, Junior Note, and Senior Notes.  Defendants therefore respectfully refer the Court to the relevant Notes for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents

and meaning.  The allegation in Paragraph 60 that the PE Fund Note constituted a default is a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegation.  Defendants admit that Defendants did not state to Plaintiffs that the PE Fund Note constituted a default, but otherwise deny the remaining allegations in Paragraph 60.

61.     Paragraph 61 contains allegations relating to the Bergmann Settlement.  Defendants therefore respectfully refer the Court to the Bergmann Settlement for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning. Defendants admit that the $13.5 million value of the PE Fund Note, combined with the $2.5 million transaction fee, results in a total value of $16 million.  Defendants admit that in June 2021, the Company made a $16 million payment to Bergmann.  Defendants deny the remaining allegations in Paragraph 61.

62.     Defendants admit that the Company made a $16 million payment to Bergmann in June 2021, and that Bergmann's interest in the Company was held in common stock.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 62 relating to Wrigley's intent and motives and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 62.

63.     Defendants deny the allegations in Paragraph 63.

64.     Defendants deny the allegations in Paragraph 64.

65.     Defendants admit that the Company has disputed TradeInvest's alleged attempt to rescind its SAFE investment on December 30, 2021.  Defendants admit that Wrigley invested more than $10 million in the SAFE, but otherwise deny the allegations contained in the footnote of Paragraph 65.  Defendants deny the remaining allegations in Paragraph 65.

66.     Defendants admit that Plaintiffs began discussing the SAFE investment with the Securities Defendants in or around July 2021 and that Plaintiffs funded their $25 million SAFE investment on September 27, 2021.  The remainder of Paragraph 66 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 66.

67.     Defendants admit that on or about July 22, 2021, Holmes and Whitcomb participated in a Zoom call with Trip McCoy, that Holmes and Whitcomb explained during the call that the SPAC transaction was being repriced at a lower value, and that the Company was looking to raise funds as part of a new SAFE security.  Defendants deny the allegation that at that point, Holmes' and Whitcomb's "story was that the additional funds would be 'bridge' capital to fund the Company's capital projects and operating expenses until the SPAC could close."  The remainder of Paragraph 67 contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 67.

68.     Defendants admit that during a Zoom call on July 26, 2021, Holmes and Whitcomb informed McCoy that the Company's board of directors had approved increasing the maximum proceeds of the SAFE to $100 million.  Defendants deny the remaining allegations in Paragraph 68.

69.     Defendants admit that Holmes and Whitcomb did not disclose the information listed in Paragraph 69, subsections (a) through (c), but deny that any such disclosures were required.  Defendants otherwise deny the allegations in Paragraph 69.

70.     Paragraph 70 contains allegations relating to the "August 2021 Company Overview:  Parallel / Ceres Acquisition Corp. SPAC Transaction" presentation.  Defendants therefore respectfully refer the Court to the "August 2021 Company Overview:  Parallel / Ceres

16

Acquisition Corp. SPAC Transaction" presentation for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants lack sufficient information to admit or deny the allegations relating to the conduct of Holmes and, on that basis, deny those allegations.  Defendants deny the remaining allegations in Paragraph 70.

71.     Paragraph 71 contains allegations relating to the "August 2021 Company Overview:  Parallel / Ceres Acquisition Corp. SPAC Transaction" presentation.  Defendants therefore respectfully refer the Court to the "August 2021 Company Overview:  Parallel / Ceres Acquisition Corp. SPAC Transaction" presentation for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants admit that in October 2021, the Company revised the projections for Projected 2022 Net Revenue and Projected 2022 Adjusted EBITDA downward by approximately 20 and 40 percent, respectively, and then by an additional 25 and 43 percent in January 2022.  Defendants further admit that by January 2022, the Company had lowered its revenue projections for 2022 by approximately 41% and its EBITDA projections by approximately 66%.  Defendants otherwise deny the remaining allegations in Paragraph 71.

72.     Defendants admit that, on or around August 5, 2021, McCoy indicated that the SAFE Plaintiffs wanted to ensure that there were other investors in the SAFE.  Defendants deny the remaining allegations in Paragraph 72.

73.     Defendants admit that McCoy stated that he had heard from others that the SPAC might not close, that Holmes and Whitcomb said the SPAC transaction might not be consummated, and that Holmes and Whitcomb said the SPAC market was in decline.  Defendants deny the remaining allegations in Paragraph 73.

74.     Defendants deny the allegations in Paragraph 74.

75.      Defendants admit that the Company transmitted to Plaintiffs SAFE documentation that included risk disclosures.  Paragraph 75 contains allegations relating to certain risk disclosures in the SAFE documentation.  Defendants therefore respectfully refer the Court to that document for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants otherwise deny the allegations in Paragraph 75.

76.      Defendants admit that on August 16, 2021, Holmes transmitted to Plaintiffs an Excel file titled 2021.08.11 Project Cereal Cap Table Analysis.  Paragraph 76 contains allegations about specific terms of the Project Cereal Cap Table Analysis.  Defendants therefore respectfully refer the Court to the Project Cereal Cap Table Analysis for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants admit that, as of December 2021, the Green Health Notes constituted debt obligations.  Defendants otherwise deny the allegation in Paragraph 76.

77.      Defendants lack sufficient information to admit or deny the allegations in Paragraph 77 and, on that basis, deny them.

78.      Defendants admit that McCoy was sent a spreadsheet indicating potential values if the Company were to be acquired by any of four different, well-known, cannabis companies, and that the Company indicated that the spreadsheet was illustrative.  Defendants respectfully refer the Court to that spreadsheet for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegation in Paragraph 78.

79.      Defendants admit that McCoy sought further assurances that at least $25 million would be invested in the SAFE alongside the SAFE Plaintiffs' proposed $25 million commitment.  Defendants admit that and that Holmes and Whitcomb had raised, during the course of these

discussions, that Wrigley might also serve as a backstop in the event the Company did not obtain $50 million in commitments from outside investors.  Defendants deny the remaining allegations in Paragraph 79.

80.   Defendants admit that, on August 30, 2021, Whitcomb sent McCoy an email. Defendants respectfully refer the Court to that email for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remainder of Paragraph 80 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 80.

81.   Defendants admit that on a September 2, 2021 Zoom call, Holmes and Whitcomb reviewed the Company's plans for capital expenditures through the end of 2022, and that Holmes and Whitcomb noted that the Company might need to raise more money following the SAFE investment raise.  Defendants deny the remaining allegations in Paragraph 81.

82.   Defendants admit that Holmes and Whitcomb walked the SAFE Plaintiffs through the Company's capital expenditure plans, which included the items listed in Paragraph 82, subsections (a) through (e).  Defendants deny the remaining allegations in Paragraph 82.

83.   Defendants deny the allegations in Paragraph 83.

84.   Defendants admit that Whitcomb emailed McCoy on September 7, 2021 and September 14, 2021.  Paragraph 84 contains allegations relating to these two emails.  Defendants therefore respectfully refer the Court to those emails for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 84.

85.   Defendants admit that Whitcomb sent an email to McCoy on September 20, 2021. Paragraph 85 contains allegations relating to that email.  Defendants therefore respectfully refer

the Court to that email for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 85.

86.     Defendants admit that Plaintiffs consented to the release of their SAFE documents from escrow and that Plaintiffs funded their $25 million investment on September 27, 2021. Defendants lack sufficient information to admit or deny the allegation relating to what Plaintiffs relied on and/or what induced Plaintiffs to consent to the release of their signatures and investment funds.  Defendants deny the remaining allegations in Paragraph 86.

87.     Defendants admit that SAFE stands for Simple Agreement for Future Equity. Defendants lack sufficient information to admit or deny Plaintiffs' allegations in Paragraph 87 regarding how other SAFE Agreements "generally" or "often" operate and, on that basis, deny those allegations.

88.     Defendants admit the allegations in Paragraph 88.

89.     Paragraph 89 and subsections (a) through (d) contain allegations about the specific terms of the SAFE, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the SAFE for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.

90.     Paragraph 90 contains allegations about the specific terms of the SAFE, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the SAFE for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 90.

91.     Paragraph 91 contains allegations about the specific terms of the SAFE, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the SAFE for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 91.

92.     Paragraph 92 contains allegations about the specific terms of the SAFE, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the SAFE for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants deny the remaining allegations in Paragraph 92.

93.     Defendants admit that Plaintiffs were provided with risk disclosures in connection with their SAFE investment.  Paragraph 93 contains allegations about the specific terms of risk disclosures, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to this document for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants lack sufficient information to admit or deny the allegations in Paragraph 93 relating to what "would have stopped the SAFE Plaintiffs from investing" and, on that basis, deny the allegations.  The remaining allegations in Paragraph 93 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 93.

94.     Paragraph 94 contains allegations about the specific terms of the risk disclosures, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the document for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in

Paragraph 94 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 94.

95.     Defendants deny the allegations in Paragraph 95.

96.     The allegations in Paragraph 96 relating to the Company's incurring of defaults are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny these allegations.  Defendants deny the remaining allegations in Paragraph 96.

97.     Defendants admit that PE Fund sent a default notice to the Company on November 29, 2021.  Defendants respectfully refer the Court to this notice for its full context and meaning and deny the allegations in Paragraph 97 to the extent they conflict with these documents.  The remaining allegations in Paragraph 97 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 97.

98.     Defendants admit that Talladega LP sent the Junior Lien Notice to the Company on December 16, 2021.  Defendants respectfully refer the Court to the Junior Lien Notice for its full context and meaning and deny the allegations in Paragraph 98 to the extent they conflict with this document.  The remaining allegations in Paragraph 98 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 98.

99.     Paragraph 99 contains allegations about the specific terms of the Junior Lien Notice and various loan agreements, the text of which provides the best evidence of those terms. Defendants therefore respectfully refer the Court to the Junior Lien Notice and the loan agreements for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  The remaining allegations in Paragraph 99 contain legal

conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 99.

100.    Paragraph 100 contains allegations about the specific terms of the Forbearance Agreement, the text of which provides the best evidence of those terms.  Defendants therefore respectfully refer the Court to the Forbearance Agreement for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning. Defendants deny the remaining allegations in Paragraph 100.

101.    Defendants admit that, on October 1, 2021, an email was sent to investors on behalf of Wrigley.  Paragraph 101 contains allegations relating to that email.  Defendants therefore respectfully refer the Court to the email for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.

102.    Paragraph 102 contains allegations relating to an October 1, 2021 email. Defendants therefore respectfully refer the Court to the email for its full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning. Defendants admit that McCoy conveyed to Holmes and Whitcomb that it was important to the SAFE Plaintiffs that Wrigley also invest in the SAFE, and that Wrigley invested $10.6 million in the SAFE.  Defendants lack sufficient information to admit or deny the allegation relating to Wrigley's knowledge and/or subjective feelings and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 102.

103.    Defendants admit that Wrigley invested $10.6 million in the SAFE.  Defendants further admit that the Company made a $3 million payment on the principal of the PE Fund Note. Defendants lack sufficient information to admit or deny the allegations relating to Wrigley's

motive and/or intent and, on that basis, deny them.  Defendants deny the remaining allegations in Paragraph 103.

104.    Defendants are unable to respond to the allegations in Paragraph 104 because the allegation that an undisclosed fact "completely altered the landscape of the investment" is vague, ambiguous, and a matter of opinion.  To the extent that a response is required, Defendants deny the allegations in Paragraph 104.

105.    Defendants admit that, on or around December 1, 2021, PWP informed investors that the year-end interest payment on the Senior Notes would not be paid.

106.    Defendants deny the allegations in Paragraph 106.

107.    Defendants deny the allegations in Paragraph 107.

108.    Defendants admit that McCoy and Whitcomb exchanged text messages on December 7, 2021.  Paragraph 108 contains allegations relating to those text messages.  Defendants therefore respectfully refer the Court to those text messages for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning. Defendants deny the remaining allegations in Paragraph 108.

109.    Defendants admit that McCoy and Whitcomb exchanged text messages on December 7, 2021.  Paragraph 109 contains allegations relating to those text messages.  Defendants therefore respectfully refer the Court to those text messages for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning. Defendants deny the remaining allegations in Paragraph 109.

110.    Defendants admit that Plaintiffs were granted access to PWP's data room in December 2021.  Paragraph 110 contains allegations relating to a document titled "Capital Structure and Waterfall Information" and the Project Cereal Cap Table Analysis.  Defendants

therefore respectfully refer the Court to the "Capital Structure and Waterfall Information" document and the Project Cereal Cap Table Analysis for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants admit that the Company previously provided the Project Cereal Cap Table Analysis.  Defendants lack sufficient knowledge to admit or deny the allegations relating to what Plaintiffs would have done in a counterfactual scenario and, on that basis, deny those allegations.  Defendants deny the remaining allegations in Paragraph 110.

111.   Defendants admit that during a Zoom call on or around November 18, 2021 with McCoy, Wrigley, Holmes, and Whitcomb, Wrigley described the status of the funding of his SAFE investment.  Defendants lack sufficient knowledge to admit or deny the allegations relating to the call between McCoy and Holmes and, on that basis, deny them.  Paragraph 111 contains allegations relating to certain email communications.  Defendants therefore respectfully refer the Court to those emails for their full context and meaning and deny the allegations to the extent the allegations conflict with the contents and meaning.  Defendants admit that Wrigley invested $10.6 million in the SAFE.  Defendants deny the remaining allegations in Paragraph 111.

112.   Defendants admit that a document containing the copied excerpt in Paragraph 112 was uploaded to the data room.

113.   Defendants deny the allegations in Paragraph 113.

114.   Defendants admit that the Company made a $3 million payment on the principal of the PE Fund Note. Defendants otherwise deny the allegations in Paragraph 114.

115.   Defendants deny the allegations in Paragraph 115.

116.   Paragraph 116 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants lack sufficient knowledge to admit or deny the

allegations relating to what Plaintiffs believed and/or relied upon and/or whether Plaintiffs would not have agreed to invest in the SAFE and, on that basis, deny those allegations. Defendants otherwise deny the allegations in Paragraph 116.

117.    Paragraph 117 contains conclusion of law to which no response is required. To the extent a response is required, Defendants admit that Wrigley, Holmes, and Whitcomb were officers of the Company. Defendants lack sufficient knowledge to admit or deny the allegations relating to what Plaintiffs relied upon and/or whether Plaintiffs were in a position to know certain information and, on that basis, deny those allegations. Defendants otherwise deny the remaining allegations in Paragraph 117.

118.    Paragraph 118 contains conclusion of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 118.

119.    Paragraph 119 contains conclusion of law to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 119.

120.    Defendants admit that Plaintiffs invested $25 million in the SAFE. Defendants lack sufficient knowledge to admit or deny the allegation relating to whether Plaintiffs would not have invested in the SAFE in a counterfactual situation and, on that basis, deny the allegation. The remaining allegations in Paragraph 120 contains conclusion of law to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 120.

121.    Paragraph 121 contains conclusion of law to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 121.

122.    Defendants incorporate their responses set forth above to the preceding paragraphs.

123.    Defendants admit that Plaintiffs have brought a cause of action against the Securities Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, but deny that such claim has any merit.

124.    Defendants deny the allegations in Paragraph 124.

125.    Defendants deny the allegations in Paragraph 125.

126.    Paragraph 126 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants lack sufficient knowledge to admit or deny the allegations relating to what Plaintiffs relied on and/or knew, and/or whether Plaintiffs would not have made the SAFE investment and, on that basis, deny those allegations.  Defendants otherwise deny the allegations in Paragraph 126.

127.    Defendants deny the allegations in Paragraph 127.

128.    Defendants incorporate their responses set forth above to the preceding paragraphs.

129.    Defendants admit that Plaintiffs have brought a cause of action against Wrigley, Holmes, and Whitcomb for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78(a), but deny that such claims have any merit.

130.    Paragraph 130 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants admit that Wrigley, Holmes, and Whitcomb held positions as officers and directors of the Company, but otherwise deny the allegations in Paragraph 130.

131.    Paragraph 131 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 131.

132.    Paragraph 132 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegation in Paragraph 132.

133.    Defendants deny the allegation in Paragraph 133.

134.    Defendants deny the allegation in Paragraph 134.

135.    Defendants incorporate their responses set forth above to the preceding paragraphs.

136.    Defendants admit that the address under Whitcomb's signature on the SAFE was in Atlanta, Georgia.  The remaining allegations in Paragraph 136 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 136.

137.    Defendants admit that Plaintiffs have brought a cause of action pursuant to Section 10-5-58 of the Georgia Code against the Securities Defendants, but deny that the claim has merit. Plaintiffs' allegation that they are not required to allege that the Securities Defendants acted with scienter or fraudulent intent contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny this allegation.

138.    Defendants deny the allegations in Paragraph 138.

139.    Defendants incorporate their responses to the allegations that Paragraph 139 implicitly references, and otherwise deny the allegations in Paragraph 139.

140.    Paragraph 140 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants lack sufficient knowledge to admit or deny the allegation relating to whether Plaintiffs would not have invested in the SAFE and what Plaintiffs relied on and, on that basis, denies the allegation.  Defendants otherwise deny the allegations in Paragraph 140.

141.    Paragraph 141 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 141.

142.    Defendants incorporate their responses set forth above to the preceding paragraphs.

143.     Defendants admit that Plaintiffs have brought a cause of action pursuant to Section 10-5-58(g) of the Georgia Code against Wrigley, Holmes, and Whitcomb, but deny that the claim has merit.  Plaintiffs' allegation that they are not required to allege that Wrigley, Holmes, and Whitcomb acted with scienter or fraudulent intent contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny this allegation.

144.     Paragraph 144 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 144.

145.     Paragraph 145 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants admit that Wrigley, Holmes, and Whitcomb were officers and/or directors of the Company, but otherwise deny the remaining allegations in Paragraph 145.

146.     Paragraph 146 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the remaining allegations in Paragraph 146.

147.     Paragraph 147 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 147.

148.     Defendants deny the allegations in Paragraph 148.

149.     Defendants incorporate their responses set forth above to the preceding paragraphs.

150.     Defendants admit that the SAFE Plaintiffs bring this cause of action, but deny it has merit.

151.     Defendants deny the allegations in Paragraph 151.

152.     Defendants deny the allegations in Paragraph 152.

153.     Defendants deny the allegations in Paragraph 153.

154.     Defendants deny the allegations in Paragraph 154.

155.    Paragraph 155 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants lack sufficient knowledge to admit or deny the allegation relating to what Plaintiffs relied on and/or knew and, on that basis, deny the allegation.  Defendants otherwise deny the allegations in Paragraph 155.

156.    Defendants lack sufficient knowledge to admit or deny the allegations in Paragraph 156 and, on that basis, deny the allegations.

157.    Paragraph 157 contains conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 157.

158.    This cause of action was dismissed by the Court on July 5, 20023 (Dkt. No. 108) and so no response is required.  To the extent a response is required, Defendants incorporate their responses set forth above to the preceding paragraphs.

159.    This cause of action was dismissed and so no response is required.

160.    This cause of action was dismissed and so no response is required.

161.    This cause of action was dismissed and so no response is required.

162.    This cause of action was dismissed and so no response is required.

163.    This cause of action was dismissed and so no response is required.

164.    This cause of action was dismissed and so no response is required.

## **PRAYER FOR RELIEF**

1.    Defendants deny that the headings and the prayers for relief contained in the Complaint constitute allegations of fact, and deny them to the extent they are considered as such. Defendants deny that Plaintiffs are entitled to the relief sought in their Prayer for Relief, and further deny that Plaintiffs are entitled to any relief whatsoever.

## <u>DEMAND FOR JURY TRIAL</u>

Defendants deny that Plaintiffs' demand for a jury trial is an allegation of fact to which a response is required.

## **SEPARATE DEFENSES**

By designating the following defenses, Defendants do not in any way waive or limit any defenses that are or may be raised by their denials and averments.  These defenses are pled in the alternative, and are raised to preserve the rights of Defendants to assert such defenses, and are without prejudice to Defendants' ability to raise other and further defenses.  Defendants expressly reserve all rights to re-evaluate their defenses and/or assert additional defenses upon discovery and review of additional documents and information, upon the development of other pertinent facts, and/or during pretrial proceedings in this action.

Without admitting any wrongful conduct on the part of Defendants and without conceding that they have the burden of proof on any of the following defenses, Defendants assert the following defenses to the Complaint and reserve the right to add, alter and/or amend their defenses and affirmative defenses as the course of discovery so requires.

### **First Defense**

(Failure to State a Claim for Relief)

Plaintiffs' claims for relief are barred, in whole or in part, because they fail to state a claim against Defendants upon which relief may be granted.

### **Second Defense**

(Doctrine of Laches)

Plaintiffs' claims for relief are barred, in whole or in part, by the doctrine of laches.

### **Third Defense**

(Standing)

Plaintiffs' claims for relief are barred, in whole or in part, insofar as Plaintiffs lack standing to assert the claims alleged in this action.

## Fourth Defense

(Failure to Use Due Care)

Plaintiffs' claims for relief are barred, in whole or in part, under equitable doctrines, including, without limitation, the failure to use due care or the failure to exercise appropriate due diligence.

## Fifth Defense

(Bespeaks Caution Doctrine and Forward-Looking Statements)

Plaintiffs' claims for relief are barred, in whole or in part, because some or all of the alleged public disclosures bespoke caution and/or were forward-looking statements and/or contained sufficient cautionary language and risk disclosure as to be non-actionable under the PSLRA.

## Sixth Defense

(No Material Misrepresentation)

Plaintiffs' claims for relief are barred, in whole or in part, because the public filings, registration statements, and written and oral statements by SH Parent, Inc. did not contain any actionable misrepresentations or omissions, all statements alleged to have been made had a reasonable basis in fact, and because any alleged misrepresentations or omissions were not material.

## Seventh Defense

(No Scienter/Culpable Participation)

Plaintiffs' claims for relief are barred in whole or in part because Plaintiffs have failed to allege, and cannot prove, any facts showing that Defendants acted with the requisite scienter or culpably participated in the alleged misconduct.

## Eighth Defense

(Good Faith)

Plaintiffs' claims for relief are barred, in whole or in part, because at all times mentioned in the Complaint and with respect to all matters contained therein, Defendants acted in good faith and exercised reasonable care and diligence and did not know, and in the exercise of reasonable

care could not have known, of any alleged misconduct, untruth, omission, or any other action in the Complaint that allegedly give rise to liability.  At all relevant times, Defendants acted without intent to defraud and without recklessness or negligence, and did not directly or indirectly induce the acts constituting alleged violations of Section 10(b) and Rule 10b-5.

### Ninth Defense

(Public Disclosure)

Plaintiffs' claims for relief are barred, in whole or in part, because Defendants are not liable to Plaintiffs for any claims based on alleged misrepresentations or omissions that were publically disclosed or were in the public domain and thus were available to Plaintiffs.

### Tenth Defense

(Actual or Constructive Knowledge)

Plaintiffs' claims for relief are barred, in whole or in part, because Defendants are not liable to Plaintiffs for any claims based on alleged misrepresentations or omissions for which Plaintiffs and/or their agents, financial representatives, and/or broker-dealers had, in whole or part, actual or constructive knowledge.

### Eleventh Defense

(No Reasonable Reliance)

Plaintiffs' claims for relief are barred, in whole or in part, because at all relevant times Plaintiffs and/or their purported agents did not reasonably rely on any material misrepresentations or omissions, or on the price of SH Parent, Inc.'s securities as affected by any alleged misrepresentations or omissions, in purchasing SH Parent, Inc. securities.

### Twelfth Defense

(No Causation of Violation)

Plaintiffs' claims for relief are barred, in whole or in part, because Defendants did not directly or indirectly cause the alleged violations complained of in the Complaint.

### Thirteenth Defense

(No Loss Causation)

Plaintiffs' claims for relief are barred, in whole or in part, because Plaintiffs cannot show loss causation.

### Fourteenth Defense

(No Economic Loss)

Plaintiffs' claims for relief are barred, in whole or in part, because Plaintiffs suffered no economic loss.

### Fifteenth Defense

(Failure to Mitigate Damages)

Any damage, loss, or liability sustained by Plaintiffs (which Defendants deny) must be reduced, diminished, and/or barred in proportion to Plaintiffs' failure to mitigate, reduce, or otherwise avoid any alleged damages.

### Sixteenth Defense

(Duplicative Recovery)

Any damage, loss, or liability sustained by Plaintiffs (which Defendants deny) must be reduced, diminished and/or barred to the extent Plaintiffs seek an overlapping or duplicative recovery pursuant to the various claims against Defendants or others.

### Seventeenth Defense

(Proportionate Reduction of Judgment)

Any judgment against Defendants must be reduced, diminished, and/or barred in proportion to the percentage of responsibility, if any, assessed by the jury as to Defendants pursuant to the PSLRA, 15 U.S.C. § 78u-4, principles of equitable allocation, recoupment, set off, proportionate responsibility, comparative fault, any settlement credit, and/or any other applicable law or doctrine.

**Eighteenth Defense**

(Fraud of Others)

If the allegations in the Complaint are true (which Defendants deny), then Defendants were victims of fraud, deceit, misrepresentations, concealment, negligence, breach of contract, and/or breach of duties practiced upon them by others, in that information relating to SH Parent, Inc. and related entities was not provided to Defendants and/or was knowingly concealed from Defendants.

**RESERVATION OF RIGHTS**

Defendants reserve the right to add additional defenses as they become known during the course of this litigation, consistent with the Federal Rules of Civil Procedure.

**WHEREFORE**, Defendants respectfully seek judgment as follows:

A.     That Plaintiffs take nothing by virtue of the Complaint;

B.     That Plaintiffs' claims against Defendants are dismissed with prejudice;

C.     That Defendants be awarded the costs of defending this action, including reasonable attorneys' fees, costs and disbursements; and

D.     For such other and further relief as this Court may deem just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Defendants hereby demand a jury trial.


Date:   August 3, 2023

**SAUL EWING LLP**

By:     */s/ Jeffrey Gilbert*
        Jeffrey Gilbert
        Florida Bar No. 375411
        Steven M. Dickstein
        Florida Bar No. 1010439
        Jeffrey.Gilbert@saul.com
        Steven.Dickstein@saul.com
        701 Brickell Avenue, 17th Floor
        Miami, Florida 33131
        305-428-4552


**AKIN GUMP STRAUSS HAUER & FLED LLP**

By:     */s/ Neal R. Marder*
        Neal Ross Marder (*pro hac vice*)
        nmarder@akingump.com
        Joshua A. Rubin (*pro hac vice*)
        rubinj@akingump.com
        Sina S. Safvati (*pro hac vice*)
        ssafvati@akingump.com
        1999 Avenue of the Stars, Suite 600
        Los Angeles, CA 90067
        310-229-1000

Stephanie Lindemuth (*pro hac vice*)
slindemuth@akingump.com
One Bryant Park
Bank of America Tower
New York, NY 10036
212-872-7491

***Attorneys for Defendants SH Parent Inc.
d/b/a Parallel, Surterra Holdings Inc., and
James Whitcomb***