**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 9:22-cv-80360-LEIBOWITZ/REINHART**

TRADEINVEST ASSET MANAGEMENT
COMPANY (BVI) LTD., FIRST OCEAN
ENTERPRISES SA, and TECHVIEW
INVESTMENTS LTD.,

          Plaintiffs,

v.

WILLIAM "BEAU" WRIGLEY, JR., JAMES
HOLMES, JAMES WHITCOMB, SH PARENT
INC. d/b/a PARALLEL, and SURTERRA
HOLDINGS, INC.,

          Defendants.

**PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT AND FOR**
**<u>RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................3

    A.    The SAFE Transactions ..............................................................................3

    B.    Relevant Procedural History .......................................................................4

LEGAL STANDARD...........................................................................................................7

ARGUMENT........................................................................................................................7

    A.    The Record Contains Whitcomb's Executed Signature On The
            TradeInvest SAFE Agreement.....................................................................7

    B.    Once The Error Is Corrected, Summary Judgment Cannot Stand.........................10

    C.    The Court Should Also Reconsider Its Rulings On Counts III–V..........................14

CONCLUSION....................................................................................................................14

REQUEST FOR HEARING................................................................................................15

LOCAL RULE 7.1(A)(3) CERTIFICATION ....................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................11

*Arthur v. King*,
500 F.3d 1335 (11th Cir. 2007) ................................................................................7

*Banister v. Davis*,
590 U.S. 504 (2020)...................................................................................................7

*Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
713 F.2d 618 (11th Cir. 1983) ..................................................................................9

*Blue Chip All., LLC v. Chetu, Inc.*,
2025 WL 4038069 (S.D. Fla. Dec. 2, 2025) .............................................................1

*Campero USA Corp. v. ADS Foodservice, LLC*,
916 F. Supp. 2d 1284 (S.D. Fla. 2012) ..................................................................2, 7

*Imaging Bus. Machs., LLC v. BancTec, Inc.*,
459 F.3d 1186 (11th Cir. 2006) ..............................................................................11

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
626 F.3d 1327 (11th Cir. 2010) ................................................................................1

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
861 F. Supp. 2d 262 (S.D.N.Y. 2012)......................................................................13

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)..............................................................2, 5, 9, 12, 13, 14

*Osterneck v. Ernst & Whinney*,
489 U.S. 169 (1989)...................................................................................................7

*RJ's Int'l Trading, LLC v. Crown Castle S., LLC*,
2021 WL 6013827 (S.D. Fla. Oct. 19, 2021)............................................................9

*SEC v. Ahmed*,
308 F. Supp. 3d 628 (D. Conn. 2018)...................................................................12, 13

*SEC v. Morrone*,
997 F.3d 52 (1st Cir. 2021).....................................................................................13

*SEC v. Tourre*,
2013 WL 2407172 (S.D.N.Y. June 4, 2013) ...........................................................................13

*SEC v. Wang*,
2015 WL 12656906 (C.D. Cal. Aug. 18, 2015)......................................................................13

*Shea v. Best Buy Homes, LLC*,
533 F. Supp. 3d 1321 (N.D. Ga. 2021).................................................................................14

*United States v. Isaacson*,
752 F.3d 1291 (11th Cir. 2014) ............................................................................................12

Plaintiffs TradeInvest Asset Management Company (BVI) Ltd. ("TradeInvest") and First Ocean Enterprises SA ("First Ocean") respectfully move this Court pursuant to Federal Rule of Civil Procedure 59(e)[1] to alter or amend the judgment entered on July 28, 2026 and to reconsider the order granting Defendants' motion for summary judgment (Dkt. 385 ("Order")).[2]

## INTRODUCTION

The Court should grant reconsideration because the Order dismissed Plaintiffs' federal securities claims on the mistaken premise that the summary judgment record contains no copy of the SAFE Agreements bearing the signature of Defendant James Whitcomb, who was Parallel's Chief Development Officer during the relevant period and solicited the SAFE investment from Plaintiffs.  The summary judgment record, in fact, contains multiple copies of the TradeInvest SAFE with Whitcomb's signature on it:

IN WITNESS WHEREOF, the undersigned have caused this Safe to be duly executed and delivered.

SH PARENT, INC.

By: _____
Name: James Whitcomb
Title: Chief Development Officer & Secretary

Address: 55 Ivan Allen Blvd. Jr. NW, 9th Floor
Atlanta, Georgia 30308
Email: jwhitcomb@liveparallel.com

---

[1] Although there "are several ways to amend or correct a final judgment," *Blue Chip All., LLC v. Chetu, Inc.*, 2025 WL 4038069, at *1 (S.D. Fla. Dec. 2, 2025) (Leibowitz, J.), Plaintiffs bring this motion pursuant to Rule 59(e), which provides for "[a] motion to alter or amend a judgment," Fed. R. Civ. P. 59(e), based on "manifest errors of law or fact," *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010).  Plaintiffs respectfully note that correction would also be appropriate under Rule 60, which permits a court to relieve a party from a final judgment or order for "mistake" or "any [] reason that justifies relief."  Fed. R. Civ. P. 60(b)(1), (b)(6); *Blue Chip*, 2025 WL 4038069, at *1.

[2] Plaintiffs' filing of this narrow motion for reconsideration does not waive and expressly preserves other issues for appeal not addressed herein.

*See* Dkt. 375-10 at 19; Dkt. 369-8 at 10.[3]  As shown, Whitcomb countersigned the TradeInvest SAFE on behalf of Parallel, above Parallel's Atlanta, Georgia address.  Plaintiffs placed that executed agreement before the Court, submitting it as an exhibit and identifying it, in their supplemental brief, as the "executed SAFE for TradeInvest."  Dkt. 375 (Plfs.' SJ *Morrison* Br.) at 5; *see also* Dkt. 369 (Plfs.' SJ GUSA Br.) at 6 ("SAFE executed by TradeInvest and by Parallel (through Whitcomb)").

That error was central to the Court's analysis and ruling.  The Court returned to the point more than eight times across its Order, each time treating Whitcomb's signature block as unsigned. *See* Order at 11, 21, 23 & n.85, 27–28, 30.  That is a clear error that warrants resolution under Rule 59(e) because it was "an error not of reasoning but of apprehension."  *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1293 (S.D. Fla. 2012).

Once the error is corrected, the *Morrison* analysis compels a different result.  The corrected record shows that a U.S. citizen executed the SAFE on behalf of a U.S. company, at a U.S. address, and Defendants offered *no* evidence to the contrary.  That is precisely the kind of evidence that *Morrison* and its progeny cite in determining domesticity, and it establishes that the SAFE transactions were domestic—or it at the very least raises a genuine dispute that forecloses summary judgment on Counts I and II.  Further, as discussed below, if the Court takes Plaintiffs' signatures on the SAFE agreements as evidence of their locations, Order at 23, it should do the same for Defendant Whitcomb's signature, which was applied above an address in Georgia, and therefore creates a nexus—or at least a genuine issue of material fact as to a nexus—with Georgia for Counts III and IV.  And if the Court grants reconsideration of Counts I through IV, it should exercise supplemental jurisdiction over Count V.

---

[3] Docket citations herein refer to the page numbers applied by the CM/ECF system.

Plaintiffs are mindful of the demands that reconsideration places on the Court.  But the Court's decision rested on a clear mistake about the record and other errors.  Upon reconsideration, the grant of summary judgment should be denied.

## BACKGROUND

### A.      The SAFE Transactions

In September 2021, Plaintiffs acquired SAFE securities from Parallel for a total of $25 million.  Plaintiffs executed the SAFEs outside the United States and then transmitted them to their agent, PSQ Capital, LLC (specifically, PSQ's employee, Trip McCoy, who was in Florida).  *See* Dkt. 375-2 at 2; Dkt. 375-7 at 2; Dkt. 375-1 (McCoy Decl.) ¶¶ 4, 8; Dkt. 273 (Defs.' SMF) (sealed) ¶ 11; Dkt. 275 (Defs. SMF) (redacted) ¶ 11.  McCoy in turn transmitted each SAFE to Win Rutherford, Parallel's outside counsel at Greenberg Traurig's office in Miami, Florida, for escrow pending closing, Dkt. 375-3 at 2; Dkt. 375-8; Dkt. 375-1 (McCoy Decl.) ¶¶ 5, 9, which Defendants did not dispute at summary judgment, *see* Dkt. 370 (Defs.' SJ GUSA Br.) at 6 ("Attorneys from Greenberg Traurig's Miami, Florida office held the parties' signatures in escrow.").

Whitcomb signed the TradeInvest SAFE on behalf of Parallel.  *See* Dkt. 375-10 at 19 (TradeInvest SAFE with Whitcomb's signature); Dkt. 375-2 at 11 (First Ocean SAFE).[4]  "Parallel is a Delaware corporation, with its principal place of business in Atlanta, Georgia."  Order at 4; *see also* Dkt. 375-10 (TradeInvest SAFE) at 11 ("SH Parent, Inc., a Delaware corporation"); Dkt. 375-2 (First Ocean SAFE) at 3 (same); Dkt. 369 (Plfs.' SJ GUSA Br.) at 5–6.  On both the TradeInvest and First Ocean SAFEs, Whitcomb's signature block lists an Atlanta, Georgia address. Dkt. 375-10 (TradeInvest SAFE) at 19; Dkt. 375-2 (First Ocean SAFE) at 11.  Both Parallel and Whitcomb admitted in their answer "that the address *under Whitcomb's signature* on the SAFE

---

[4] Plaintiffs maintain that Whitcomb signed the First Ocean SAFE as well, *see, e.g.*, *infra* at 9, even though there is no copy of a Whitcomb-executed First Ocean SAFE in the record.

3

was in Atlanta, Georgia."  Dkt. 116 (Parallel's & Whitcomb's Answer) ¶ 136 (emphasis added).

Further, Whitcomb testified that he has lived only in Florida, Georgia, New York, and Connecticut.

Defs.' SJ Ex. 2 (Whitcomb Tr.) (sealed) at 11:9–21 ("I moved to Connecticut from New York

City . . . . I was living, on a temporary basis, in Florida . . . right before and at the onset of COVID,

in West Palm Beach.  And prior to that, I was living in Atlanta, Georgia; first in midtown Atlanta

and then in Buckhead.  And then, prior to that, I was living in New York City.").

Parallel made clear that the sale of the SAFEs was not final until it received the funds.  Dkt.

375-11 at 2 ("[F]or TradeInvest to *complete its investment* under the terms of the executed

subscription documents, Parallel requires execution of a wire transfer for the aforementioned

allocation amount via wire instructions previously provided." (emphasis added)); Dkt. 375-1

(McCoy Decl.) ¶ 12 (similar); *id.* ¶ 6 ("Based on Defendant James Whitcomb's description of the

transaction, I understood that the transaction would not close—and that neither TradeInvest nor

First Ocean had any obligation to invest in the SAFE, nor owned the SAFE security—until after

the signed SAFEs had been released from escrow by Parallel in the United States."); *see also* Dkt.

370 (Defs.' SJ GUSA Br.) at 6 (discussing "Greenberg Traurig's Miami, Florida office h[o]ld[ing]

the parties' signatures in escrow" and the wiring of Plaintiffs' SAFE funds to Severn Bank in

Maryland as "[t]he closing of the SAFE").  Both Plaintiffs wired funds to a U.S. domestic bank

account in Maryland in connection with their respective SAFE allocations.  Dkt. 375-1 (McCoy

Decl.) ¶ 7; Dkt. 375-6 at 8; Dkt. 370 (Defs.' SJ GUSA Br.) at 6.

**B.      Relevant Procedural History**

On March 8, 2022, Plaintiffs filed suit against Defendants, alleging six causes of action:

Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (Count I);

Violations of Section 20(a) of the Securities Exchange Act of 1934 (Count II); Violations of the

Georgia Uniform Securities Act ("GUSA") of 2008 (O.C.G.A. § 10-5-58) (Count III); Violations

of the Georgia Uniform Securities Act of 2008 (O.C.G.A. § 10-5-58(g)) (Count IV); Common-Law Fraud / Fraudulent Inducement (Count V); and a violation of the Georgia Uniform Voidable Transactions Act (O.C.G.A. § 18-2-74) (Count VI).  Count VI was the sole Count dismissed at the pleading stage.  Dkt. 108 at 28.

On March 7, 2025, Defendants moved for summary judgment, arguing that (1) Plaintiffs did not justifiably rely on any of the alleged misstatements, (2) Plaintiffs cannot prove loss causation, (3) the alleged misstatements and omissions are not actionable, and (4) GUSA does not apply to Plaintiffs' investments.  *See* Dkt. 272 (Defs.' MSJ) (sealed); Dkt. 274 (Defs.' MSJ) (redacted).  Defendants did not argue that the SAFE transactions were foreign and not domestic. *Id.*; *see also* Order at 15 ("The parties did not initially address the impact of *Morrison* in their summary judgment papers.").  Briefing on Defendants' motion for summary judgment concluded on May 5, 2025.  *See* Dkt. 298 (Plfs.' MSJ Opp. Br.); Dkt. 310 (Defs.' MSJ Reply Br.).

On April 2, 2026, the Court issued an order *sua sponte*, directing Plaintiffs to "supplement the record with an affidavit or citations to the summary judgment record that sets forth all facts to show the SAFE securities at issue in this lawsuit comprised a 'domestic transaction' as contemplated by the United States Supreme Court in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265-67, 273 (2010)."  Dkt. 367 at 1–2.  This April 2026 order was the first time the domesticity of the SAFEs was raised in this litigation.

On April 30, 2026, Plaintiffs filed a brief setting forth why the SAFE securities comprised a domestic transaction as discussed in *Morrison*, Dkt. 375, and a supporting affidavit from  McCoy, who was the primary individual at PSQ Capital, LLC responsible for performing diligence on the SAFE transactions on behalf of Plaintiffs, Dkt. 375-1 (McCoy Decl.).  Defendants opposed, Dkt. 376; Dkt. 377, and Plaintiffs submitted a reply, Dkt. 380.

On July 6, 2026, the Court issued an order granting summary judgment to Defendants on Counts I, II, III, and IV and dismissing Count V after declining to retain supplemental jurisdiction over it.  As to Count I, the Court found that "Plaintiffs have failed to meet their burden to plead and prove the SAFE transactions were domestic."  Order at 23; *see also id.* at 21 (similar).  In so ruling, the Court stated that "Plaintiffs have failed to show where, physically, the purchaser or seller committed him or herself to pay for or deliver a security."  *Id.* at 22 (quotation marks omitted).  In concluding that the purchasers (here, Plaintiffs) were located outside the United States when they signed the SAFEs, the Court relied on their signature blocks:  "[*A*]*ccording to their signatures*, Plaintiffs' representatives executed the SAFE Agreements on their behalf while *outside the United States*."  *Id.* at 23 (first emphasis added).  Meanwhile, as to the signature block of the seller (here, Parallel acting through its employee Whitcomb), the Court stated that Whitcomb's signature block was "unexecuted," *id.*; *see also id.* at 11, 21, 23 n.85, 27–28, 30—even though the summary judgment record contained two copies of the TradeInvest SAFE agreement with Whitcomb's signature, *see* Dkt. 375-10 at 19; Dkt. 369-8 at 10.  Having found that the record contained only "Whitcomb's unexecuted signature block (with an Atlanta, Georgia mailing address)," the Court held that "Plaintiffs have not pointed to any record evidence that establishes (or creates a genuine issue) that Whitcomb was physically located in the United States at the time he countersigned the SAFE Agreements (if indeed he signed them)."  Order at 23.

The Court's understanding that the record did not contain an executed SAFE Agreement with Whitcomb's signature carried through to the dismissal of the other claims.  The Court granted summary judgment to Defendants on Count II because "Plaintiffs cannot withstand summary judgment on their Section 20(a) derivative claim" "without a Section 10(b) claim."  *Id.*  The Court granted summary judgment to Defendants on the GUSA claims in Counts III and IV because

"Plaintiffs have not shown the required nexus between the SAFE Investments and the State of Georgia." *Id.* at 24. And it dismissed Count V without prejudice because it declined to exercise supplemental jurisdiction over that claim in light of its dismissal of the other claims. *Id.* at 33–35.

On July 28, 2026, the Court entered its Final Judgment pursuant to Federal Rule of Civil Procedure 58 in favor of Defendants on Counts I, II, III, and IV. Dkt. 386.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) authorizes motions to alter or amend a judgment within 28 days of the judgment when a party seeks "reconsideration of matters properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). "The Rule gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quotation marks omitted). One ground for Rule 59(e) relief is the need to correct clear error or manifest injustice. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). "[C]lear error or manifest injustice occurs where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Campero*, 916 F. Supp. 2d at 1292–93 (quotation marks omitted).

## ARGUMENT

The Court's Order rests on a misapprehension about the record and correcting it warrants denial of summary judgment. The error and its consequences are addressed in turn.

### A. The Record Contains Whitcomb's Executed Signature On The TradeInvest SAFE Agreement

The Court's Order rests on a clear error about the scope of the summary judgment record. In addressing Counts I, II, III, and IV, the Court stated several times that the SAFEs "don't even have Whitcomb's *signature* on" them. Order at 23 (emphasis in original); *id.* (referring to

7

"Whitcomb's unexecuted signature block"); *id.* (questioning whether Whitcomb "indeed [] signed the[]" SAFEs); *id.* at 21 ("[T]he SAFE Agreements that bear Whitcomb's *signature block* do not contain his *signature.*" (emphases in original)); *id.* at 11 ("The SAFE Agreements executed by First Ocean and TradeInvest each contain an *unexecuted* signature block for Parallel's Chief Development Officer & Secretary, James Whitcomb, using an Atlanta, Georgia mailing address." (emphasis in original)); *id.* at 23 n.85 ("Plaintiffs' exhibit of TradeInvest's SAFE agreement [had an] unexecuted James Whitcomb[] signature block"); *id.* at 27 (referring to "Defendant James Whitcomb's unexecuted signature block on the SAFE Agreements"); *id.* at 28 (referring to "James Whitcomb's unexecuted signature block"); *id.* at 30 (referring to "Whitcomb's unexecuted signature block on Plaintiffs' SAFE Agreements").

Contrary to the Court's understanding, the summary judgment record does in fact contain multiple copies of the TradeInvest SAFE with Whitcomb's signature on it:

*See* Dkt. 375-10 at 19; *see also* Dkt. 369-8 at 10 (same).

Further, Defendants admitted that Whitcomb executed the SAFE agreements on behalf of Parallel. The Complaint alleges at Paragraph 88 that "Whitcomb executed the SAFE on behalf of SH Parent in his capacities as its Chief Development Officer and Secretary," Dkt. 59 ¶ 88, and Defendants Whitcomb, SH Parent Inc. d/b/a Parallel, and Surterra Holdings Inc. responded that

8

they "admit the allegations in Paragraph 88," Dkt. 116 ¶ 88; *see also* Dkt. 117 ¶ 88 (same admission for Defendant Wrigley). Defendants Whitcomb, SH Parent Inc. d/b/a Parallel, and Surterra Holdings Inc. also "admit[ted]" in their answer "that the address *under Whitcomb's signature* on the SAFE was in Atlanta, Georgia." Dkt. 116 ¶ 136 (emphasis added). Whitcomb cannot dispute that he signed the SAFE and that his signature block listed an Atlanta, Georgia address. "It is well-settled law that admissions in an answer are deemed judicial admissions, binding on the party who makes them." *RJ's Int'l Trading, LLC v. Crown Castle S., LLC*, 2021 WL 6013827, at *1 (S.D. Fla. Oct. 19, 2021). "Indeed, the 'judicial admissions are proof possessing the highest possible probative value' and are 'beyond the power of evidence to controvert them.'" *Id.* (quoting *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983)).

In stating that the SAFE agreements are unexecuted by Whitcomb, the Court appears to have relied on a copy of the TradeInvest SAFE that was not yet executed by Whitcomb. *See, e.g.*, Order at 23 n.85 (citing to Dkt. 375-8). That copy is attached to a September 27, 2021 email that Plaintiffs included in the record to show that McCoy had transmitted the TradeInvest SAFE (with TradeInvest's signature on it) to Whitcomb for his signature. Dkt. 375-8 at 2, 11. But Plaintiffs also included in the record a copy of the TradeInvest SAFE countersigned by Whitcomb. *See* Dkt. 375-10 at 19 (showing Whitcomb's signature above his signature block); *see also id.* at 2 ("Attached [is] the countersigned version[] of [] the SAFE agreement[.]"). Plaintiffs' *Morrison* brief highlighted that Whitcomb countersigned the TradeInvest SAFE, describing Dkt. 375-10 (which is Exhibit I) as an email "attaching executed SAFE for TradeInvest." Dkt. 375 (Plfs.' SJ *Morrison* Br.) at 5.

This clear error played a material and substantial role in the Court's rulings.  For example, the Court concluded that Defendants were entitled to summary judgment on Count I because "Plaintiffs have failed to meet their burden to plead and prove the SAFE transactions were domestic," emphasizing that "[t]he only thing in the SAFE Agreements themselves that shows a connection to the *United States* is Whitcomb's unexecuted signature block (with an Atlanta, Georgia mailing address)"[5] and that "[w]e don't even have Whitcomb's *signature* on the SAFE Agreements."  Order at 23 (emphases in original).

Plaintiffs respectfully request that the Court reconsider or amend its Order in light of this clear error.  Because the Court's understanding that the record contained no executed copy of the SAFEs was material to its dismissal of Counts I and II, correcting it necessarily requires the Court to reassess whether summary judgment on those Counts was appropriate.  And as set forth below, when the corrected record is measured against the governing standard, the SAFE transactions were domestic as a matter of law, or there is, at the very least, a genuine dispute that forecloses summary judgment.

### B.      Once The Error Is Corrected, Summary Judgment Cannot Stand

The corrected record resolves the question of Whitcomb's location.  The Court itself relied on the parties' signatures to determine where they were when they executed the SAFEs, finding

---

[5] To be sure, Plaintiffs disagree that Whitcomb's signature block is "[t]he only thing" in the SAFE Agreements that "shows a connection to the United States."  Order at 23 (emphasis omitted).  There are several other aspects of the SAFEs themselves that show a connection to the United States, including: (1) Section 5(b) of the SAFEs contemplates that "[a]ny notice required or permitted by this Safe [sic]" can be made by "U.S. mail," Dkt. 375-10 (TradeInvest SAFE) at 17; Dkt. 375-2 (First Ocean SAFE) at 9; (2) Section 5(f) of the SAFEs provides that "[a]ll rights and obligations hereunder will be governed by the laws of the State of Delaware," Dkt. 273 (Defs.' SMF) (sealed) ¶ 72; Dkt. 275 (Defs.' SMF) (redacted) ¶ 72; Dkt. 375-10 (TradeInvest SAFE) at 17; Dkt. 375-2 (First Ocean SAFE) at 9; and (3) Section 5(g) of the SAFEs provides that "[t]he parties acknowledge and agree that for United States federal and state income tax purposes this Safe [sic] is, and at all times has been, intended to be characterized as stock," Dkt. 375-10 (TradeInvest SAFE) at 17; Dkt. 375-2 (First Ocean SAFE) at 9.

that, based solely on "their signatures, Plaintiffs' representatives executed the SAFE Agreements on their behalf while outside the United States." Order at 23 (emphases omitted). The same reasoning, applied to Whitcomb's signature, compels the conclusion that he executed the TradeInvest SAFE in Atlanta, Georgia. He signed above an Atlanta, Georgia address, on behalf of a U.S. company that indisputably operates solely in the United States, and Defendants have offered nothing to suggest he was anywhere else when he executed the agreement.[6]

The balance of the undisputed record evidence confirms that the SAFE transactions were domestic. In addition to Whitcomb's signature above an Atlanta, Georgia address, it is undisputed that:

- Whitcomb is a U.S. citizen, and he signed the SAFE Agreements on behalf of a company (Parallel) that is headquartered in (and operates solely in) the United States. *See* Dkt. 375 (Plfs.' SJ *Morrison* Br.) at 5 (citing Dkt. 375-10 (TradeInvest SAFE) at 19, bearing Whitcomb's signature on behalf of Parallel above an Atlanta, Georgia address); Dkt. 273 (Defs.' SMF) (sealed) ¶ 1 ("Parallel is a Delaware corporation"); Dkt. 275 (Defs.' SMF) (redacted) ¶ 1 (same); Order at 4 ("Parallel is a Delaware corporation, with its principal place of business in Atlanta, Georgia.");

- Whitcomb testified he has lived only in New York, Florida, Georgia, and Connecticut. *See* Dkt. 375 (Plfs.' SJ *Morrison* Br.) at 5 (citing Dkt. 272 (Defs.' MSJ) (sealed) at 43; Dkt. 274 (Defs.' MSJ) (redacted) at 43, which in turn cite Defs.' SJ Ex. 2 (Whitcomb Tr.) (sealed));

- Plaintiffs' signatures were escrowed in the United States. *See* Dkt. 370 (Defs.' SJ GUSA Br.) at 6; *see also* Dkt. 375-1 (McCoy Decl.) ¶¶ 5, 9;

- Plaintiffs' funds for the SAFE investments were wired to a U.S. bank located in Maryland. *See* Dkt. 370 (Defs.' SJ GUSA Br.) at 6; Dkt. 375-1 (McCoy Decl.) ¶ 7; Dkt. 375-6 (wire instructions) at 8;

---

[6] At the very least, this is sufficient to raise a genuine issue of material fact as to his location that must be resolved at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("At the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter[.]"); *see, e.g.*, *Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1192–93 (11th Cir. 2006) (holding the district court did not apply "the appropriate summary judgment standard" where it "discounted Imaging Business Machines' evidence, weighed it against evidence submitted by BancTec, and largely adopted BancTec's evidence in finding that Imaging Business was unlikely to succeed on the merits of whether it had trade secrets").

11

- Parallel is a Delaware corporation. *See* Dkt. 273 (Defs.' SMF) (sealed) ¶ 1; Dkt. 275 (Defs.' SMF) (redacted) ¶ 1; Order at 4; Dkt. 375-10 (TradeInvest SAFE) at 11; Dkt. 375-2 (First Ocean SAFE) at 3;

- The SAFEs include a Delaware choice-of-law provision. *See* Dkt. 273 (Defs.' SMF) (sealed) ¶ 72; Dkt. 275 (Defs.' SMF) (redacted) ¶ 72; Dkt. 375-10 (TradeInvest SAFE) at 17; Dkt. 375-2 (First Ocean SAFE) at 9;

- Parallel's principal place of business was, at the very least, in the United States, if not in Atlanta, Georgia. *See* Order at 4 ("Parallel is a Delaware corporation, with its principal place of business in Atlanta, Georgia."); Dkt. 369-2 at 2 (Parallel's Form D filed with the SEC lists an Atlanta, Georgia address as its principal place of business); Dkt. 376 (Defs. SJ *Morrison* Br.) at 9 (failing to deny that "Parallel's business operations [are] in the United States); Dkt. 116 (Parallel/Whitcomb Answer) ¶ 136 ("Defendants admit that the address under Whitcomb's signature on the SAFE was in Atlanta, Georgia."); Dkt. 369 (Plfs.' SJ GUSA Br.) at 5–6 (citing extensive evidence that Parallel was headquartered, and operated, in Atlanta, Georgia).

*See also* Order at 13, 21.

Taken together, this undisputed evidence establishes that the SAFE transactions were domestic. And Whitcomb's executed signature removes any remaining question: If he was in Georgia, as his signature proves, the transaction satisfies *Morrison* and has the very nexus with that state that the Court found lacking on Counts III and IV. *See, e.g.*, *United States v. Isaacson*, 752 F.3d 1291, 1299 (11th Cir. 2014) ("[H]av[ing] no trouble concluding that Mr. Isaacson's conduct meets *Morrison*'s requirements for a U.S. nexus" where "there was evidence that the Lancer Fund was 'run out of New York City' and that Mr. Isaacson's office was located in Florida, which supports the inference that the Lancer Fund purchased the securities in the United States."); *SEC v. Ahmed*, 308 F. Supp. 3d 628, 665 (D. Conn. 2018) ("While the residency of the buyer or seller is not controlling, it still provides some evidence of the location of that party when it acts. Here, the Oak funds . . . are all limited partnerships registered in Delaware, and the offices of Oak's managing members responsible for approving investments during the relevant time period were all in the United States. . . . [T]he fact that Oak is a United States company which

12

functioned out of United States offices during the relevant time period[] lends some support for the SEC's claim that the transactions themselves also occurred domestically." (citations omitted)).

This conclusion finds strong support in the case law.  Under *Morrison* and its progeny, a seller incurs irrevocable liability where its signatory executes the agreement, making the signatory's location a significant (often dispositive) factor.  *See, e.g.*, *SEC v. Tourre*, 2013 WL 2407172, at *12–13 (S.D.N.Y. June 4, 2013) ("[N]o reasonable jury could find that ACA LLC did not incur irrevocable liability . . . in the United States" where "Dahlman, the general counsel of ACA LLC and the individual who signed the master agreement and trade confirmation through which ACA LLC entered into the relevant CDS," "signed th[e] agreements while she was in the United States"); *SEC v. Wang*, 2015 WL 12656906, at *12 (C.D. Cal. Aug. 18, 2015) ("[T]he seller . . . did not incur irrevocable liability under the subscription agreements until they accepted the agreements and signed them, which they did in the United States."); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 269 (S.D.N.Y. 2012) ("Irrevocable liability was incurred when the Merger Agreement was executed," and the transaction was domestic because one party's "CEO signed the Agreement in Colorado"); *SEC v. Morrone*, 997 F.3d 52, 60 (1st Cir. 2021) (seller "became irrevocably liable to deliver the shares in Boston" when the "agreements were executed . . . in Boston").  In those cases, the court looked to where the signatory was when he or she signed and held the transaction domestic on that basis.  The same analysis applies here: Whitcomb signed the TradeInvest SAFE in Georgia, above a Georgia address, and on behalf of a U.S. company with its principal place of business in Georgia.  The SAFE transaction was domestic under *Morrison*, and summary judgment on that basis should be reconsidered once the error described in Section A is corrected.

13

### C.     The Court Should Also Reconsider Its Rulings On Counts III–V

Finally, for related reasons, the Court should reconsider its rulings on Counts III–V. Because Whitcomb's signature demonstrates (or at least raises a genuine issue of material fact that) he was in Georgia when he signed the SAFE, the GUSA claims have the nexus to Georgia the Court found lacking, and summary judgment on Counts III and IV should be denied. *See, e.g.*, *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1332 n.5 (N.D. Ga. 2021) ("An offer to sell is made in Georgia—regardless of whether either party is present in Georgia—if it . . . originates from within this state." (alteration adopted) (citing O.C.G.A. § 10-5-79(c))).

And because Counts I through IV should survive, the Court should reconsider its decision to decline supplemental jurisdiction over Count V. *See* Order at 33–35. With Counts I through IV reinstated, the factors of judicial economy, convenience, fairness, and comity point toward retaining supplemental jurisdiction over Count V.

### CONCLUSION

For the foregoing reasons, the Court should reconsider or amend its Order to (1) correct the Court's erroneous conclusion that the SAFEs "don't even have Whitcomb's signature," Order at 23 (emphasis omitted); (2) deny summary judgment on Counts I and II because the corrected record establishes, at minimum, a genuine dispute as to the domestic nature of the SAFE transaction; (3) deny summary judgment on Counts III and IV because Whitcomb's executed signature above Parallel's Atlanta, Georgia address creates, at minimum, a genuine issue as to the required nexus with Georgia; and (4) retain supplemental jurisdiction over Count V.

14

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs respectfully request a hearing on this motion, as they believe that the Court and the parties would benefit from argument about the summary judgment record and legal issues addressed in the Court's Order.  Counsel believes 45 to 60 minutes would be appropriate for the hearing.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Plaintiffs conferred with counsel for Defendants via email and phone on July 29, 2026.  Counsel for Wrigley and for Whitcomb, Parallel, and Surterra Holdings, Inc. advised that they will oppose the motion.  Counsel for Holmes indicated he was unable to take a position because Plaintiffs had not shared a draft of the motion.

DATED: July 30, 2026

Respectfully submitted,

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: */s/ Jason D. Sternberg*
Jason D. Sternberg (FBN 72887)
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
Telephone: (305) 439-5008
jasonsternberg@quinnemanuel.com

Michael B. Carlinsky (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Amy Shehan (*pro hac vice*)
295 Fifth Avenue, 9th Floor
New York, NY 10010
Telephone: (212) 849-7000
michaelcarlinsky@quinnemanuel.com
jacobwaldman@quinnemanuel.com
amyshehan@quinnemanuel.com

*Attorneys for Plaintiffs*

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on July 30, 2026, I filed the foregoing with the Court via its

CM/ECF system, which generated notices of electronic filing on all counsel of record.


*/s/ Jason D. Sternberg*
Fla. Bar No. 72887

16